# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
*Southern Division*

|  |  |
|---|---|
| **VIJAI RAO**, *et al.*, | \* |
| Plaintiffs, | \* |
| v. | Case No.: PWG-12-2534 |
| **ERA ALASKA AIRLINES**, *et al.*, | \* |
| Defendants. | \* |

## MEMORANDUM OPINION

Maryland Plaintiffs sue an Alaska-based airline and other Alaska Defendants for torts arising out of the loss of personal property on or shortly after a flight operated by Defendant airline. Defendants have moved to dismiss for lack of personal jurisdiction on the grounds that Plaintiffs' claims arise out of a flight within Alaska operated by an airline that transacts business only within Alaska. Plaintiffs respond by arguing that jurisdiction in Maryland is proper because Plaintiffs purchased the tickets for their intra-Alaska flight over the internet, which is sufficient to give Maryland personal jurisdiction over Defendants. Because I disagree with Plaintiffs, I find that Maryland cannot exercise personal jurisdiction over Defendants but that the interests of justice require me to transfer the case to the U.S. District Court for the District of Alaska.[1]

---

[1] This Memorandum Opinion disposes of: (1) Plaintiffs' Motion for Leave to Amend the Complaint ("Pls.' Mot. to Am."), ECF No. 17; Defendants' Opposition ("Defs.' Am. Opp'n"), ECF No. 22; and Plaintiffs' Reply ("Pls.' Am. Reply"), ECF No. 24; and (2) Defendants' Renewed Motion to Dismiss for Lack of Personal Jurisdiction ("Defs.' Mot. to Dismiss"), ECF No. 21; Plaintiffs' Opposition ("Pls.' Dismiss Opp'n"), ECF No. 23; and Defendants' Reply ("Defs.' Dismiss Opp'n"), ECF No. 26.

**I.  BACKGROUND**

In their Complaint, Plaintiffs Vijai Rao and Sumathi Mathur allege that, on August 22, 2010, they boarded a flight operated by Defendant Era Alaska Airlines ("Era") from Kodiak, Alaska to Anchorage, Alaska.  Compl. ¶ 4.1, ECF No. 1.  "Plaintiffs carried with them personal items in a carrying case [(the "Case")] on board the airline operated by the Defendants including several items of valuable jewelry and cash.  Plaintiff checked that these items were in their possession prior to boarding the airplane for the flight from Kodiak to Anchorage."  *Id.* ¶ 4.3.  After arriving in Anchorage and debarking from the airplane on August 23, 2010, Plaintiffs determined that the Case was missing.[2]  *Id.* ¶ 4.3.

Plaintiffs returned to the Anchorage airport "[d]uring the early morning hours of August 23, 2010," searched the deplaning area, and asked for permission to search the airplane from which they had debarked (the "Plane"), but were refused.  *Id.* ¶ 4.5.  They were told that Era's employees would search the airplane but could not do so for several hours.  *Id.* ¶ 4.6.  After failing to find the property at the Anchorage airport, Plaintiff Rao informed Era that he would be returning to Kodiak to search the boarding area at the Kodiak airport.  *Id.* ¶ 4.7.  Shortly before Rao boarded his flight, Era informed him that its employees had recovered his property at the Kodiak airport and discouraged him from returning to Kodiak even though he wanted to go and confirm that the Case was not there; the airline did not produce Plaintiffs' property at that time.  *Id.* ¶¶ 4.8–10.  "To further discourage Mr. Rao from making the trip to Kodiak to conduct his search, Defendant ERA Alaska Airlines promised that the cost of the round trip ticket from Anchorage to Kodiak and back would be fully refunded by Defendant."  *Id.* ¶ 4.10.  Based upon

---

[2] Because Plaintiffs allege that they carried the Case onto the airplane with them, it appears that the Case was mislaid, at least in the first instance, by Plaintiffs leaving it on the airplane or elsewhere, and not by the act of Defendants or another person.

the Airline's assurances that the Case had been located, Rao did not return to Kodiak. *Id.* ¶ 4.11.[3] The Airline later determined that it had not recovered the Case. *Id.* ¶ 4.13.

Plaintiffs "lodged a written complaint with Defendant" and filed a police report with the Anchorage airport police. *Id.* ¶¶ 4.15–16. Plaintiffs allege that they have "suffered anguish and humiliation due to the loss of valuable personal property," *id.* ¶ 4.17, although Plaintiffs do not allege that the items in the Case were of a personal or sensitive nature, but only allege that they were of significant monetary value.

On August 23, 2012, Plaintiffs filed their six-count complaint in this Court against Era, Era president Bob Hadjukovich, and "XYZ Corporations 1–5; XYZ Partnerships 1–5; and Does 1–10,"[4] alleging: (I) Negligence; (II) Breach of Implied Warranty; (III) Fraud; (V)[5] "Violation of Aviation Consumer Protection"; (VI) Gross Negligence; and (VII) Punitive Damages. Compl. Defendants Era and Hajdukovich moved to dismiss for lack of personal jurisdiction on December 28, 2012, Defs.' First Mot. to Dismiss, ECF No. 5. In May 2013, I denied the motion without prejudice and allowed the parties to undertake limited discovery to determine "if Defendants have sufficient connection with the State of Maryland such that the Court has personal jurisdiction over Defendants." Letter Order 1, ECF No. 8. The parties filed a proposed Discovery Plan on June 21, 2013, ECF No. 10.

---

[3] Insofar as Plaintiffs allege that they "checked that [the Case was] in their possession prior to boarding" in Kodiak, Compl. ¶ 4.2, it is difficult to discern how Rao's decision not to go to Kodiak has any effect on Plaintiffs' loss.

[4] The Complaint does not contain any allegations as to who these unnamed Defendants are believed to be or what Plaintiffs' good faith basis is for believing that they may be liable to Plaintiffs, other than stating that "their identities and their existence are not known at this time." Compl. ¶ 3.3.

[5] The Complaint skips Count IV.

On September 25, 2013, Plaintiffs filed a Motion for Leave to Amend the Complaint ("Pls.' Mot. to Am."), ECF No. 17, stating that "[t]he period of limited discovery . . . concluded on 23 September 2013." Pls.' Mot. to Am. ¶ 5. Plaintiffs seek to amend the Complaint to include facts supporting personal jurisdiction in Maryland over the Defendants. *Id.* ¶ 6. The proposed amended complaint seeks to add new factual allegations, including that:

> In Maryland, the Defendants utilize the online service Sabre, a Global Distribution System, which allows bookings, reservations, itineraries, and ticketing by travel agencies and individual customers. Sabre (Sabre Travel Network) is held by Sabre Holdings a travel technology company which includes Travelocity and Expedia and has an office in Bethesda, MD.
> . . . .
> . . . In 2010, Plaintiffs reserved, booked, and paid for services offered by the Defendants using the internet travel site expedia.com "Expedia" in Maryland.

Redlined Am. Compl., Pls.' Mot. to Am. Ex., ECF No. 17-2. Defendants Era and Hajdukovich opposed the Motion to Amend, *see* Defs.' Resp. in Opp'n to Pls.' Mot. for Leave to Am. the Compl. ("Defs.' Am. Opp'n"), ECF No. 22, and Plaintiffs have replied, Pls.' Resp. to Defs.' Opp'n to Pl.'s Mot. for Leave to Am. Compl. ("Pls.' Am. Reply"), ECF No. 24.

In addition to opposing the motion to amend, Defendants have renewed their motion to dismiss this case for lack of personal jurisdiction. Defs.' Renewed Mot. to Dismiss for Lack of Personal Jurisdiction ("Defs.' Mot. to Dismiss"), ECF No. 21. Plaintiffs have opposed the motion, Pls.' Resp. to Defs.' Renewed Mot. to Dismiss for Lack of Personal Jurisdiction ("Pls.' Dismiss Opp'n"), ECF No. 23, and Defendants have replied, Defs.' Reply to Pls.' Opp'n to Defs.' Renewed Mot. to Dismiss for Lack of Personal Jurisdiction ("Defs.' Dismiss Reply"), ECF No. 26.

Both the motion for leave to amend and the motion to dismiss are ripe and now are before me. Having reviewed the filings, I find a hearing is not necessary. Loc. R. 105.6.

## II.     PERSONAL JURISDICTION

When a defendant challenges this Court's personal jurisdiction under Fed. R. Civ. P. 12(b)(2), the jurisdictional question "'is to be resolved by the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence.'" *Fyfe Co., LLC v. Structural Grp., LLC*, No. CCB-13-176, 2013 WL 2370497, at *2 (D. Md. May 30, 2012) (quoting *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003)).  If the Court considers the complaint, the parties' briefings, and accompanying affidavits but does not conduct an evidentiary hearing, then "'the burden on the plaintiff is simply to make a prima facie showing of a sufficient jurisdictional basis in order to survive the jurisdictional challenge.'" *In re Celotex Corp.*, 124 F.3d 619, 628 (4th Cir. 1997) (quoting *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989)); *see Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 276 (4th Cir. 2009)).  The Court "'must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction.'"  *Fyfe Co.*, 2013 WL 2370497, at *2 (quoting *Mylan Labs, Inc. v. Akzo, N.V.*, 2 F.3d 56, 62 (4th Cir. 1993) (citation and quotation marks omitted)).  Yet, "the Court need not 'credit conclusory allegations or draw farfetched inferences.'"  *Tharp v. Colao*, No. WDQ-11-3202, 2012 WL 1999484, at *1 (D. Md. June 1, 2012) (quoting *Masselli & Lane, PC v. Miller & Schuh, PA*, No. 99-2440, 2000 WL 691100, at *1 (4th Cir. May 30, 2000)).

Personal jurisdiction may be either general or specific.  *Tawney v. AC & R Insulation Co., Inc.*, No. WDQ-13-1194, 2013 WL 5887625, at *2 (D. Md. Oct. 30, 2013); *see Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.*, 888 F. Supp. 2d 691, 699 (D. Md. 2012).

> To exercise general jurisdiction over a defendant, the defendant's activities in the state must be "continuous and systematic." *See ALS Scan, Inc. v. Digital Serv.*

> *Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002). If the cause of action arises out of the defendant's minimum contacts with the forum, the court may exercise specific jurisdiction. . . . In determining whether the exercise of specific jurisdiction comports with due process, a court considers: "(1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiff['s] claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Carefirst*, 334 F.3d at 397.

*Tawney*, 2013 WL 5887625, at *2 (footnotes omitted).

Although less contact is required with the forum state for specific jurisdiction than for general jurisdiction, *see ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 623–24 (4th Cir. 1997), both forms of jurisdiction "require[] that the defendant purposefully avail itself of the privilege of conducting activities within the forum state," *Tawney*, 2013 WL 5887625, at *2 (footnote omitted). Thus, whether a federal court may exercise personal jurisdiction is a two-part analysis: "[A] district court must determine that (1) the exercise of jurisdiction is authorized under the state's long-arm statute, and (2) the exercise of jurisdiction comports with the due process requirements of the Fourteenth Amendment." *Id.* (citing *Carefirst*, 334 F.3d at 396). The Maryland long-arm statue is "coextensive with the scope of jurisdiction allowable by due process." *Id.* (citing *Mackey v. Compass Mktg., Inc.*, 892 A.2d 479, 486 (Md. 2006)). Nonetheless, "'the Court must address both elements in the personal jurisdiction analysis.'" *Id.* (quoting *Metro. Reg'l Info. Sys.*, 888 F. Supp. 2d at 698.

**A. Long-Arm Jurisdiction**

Plaintiffs do not appear to argue that Era is subject to general jurisdiction in Maryland. Thus, for this Court to exercise jurisdiction, Plaintiffs' claims must "aris[e] from an[] act enumerated in" the Maryland long-arm jurisdiction statute. Md. Code Ann., Cts. & Jud. Proc. § 6-103(a). Maryland's statute provides:

>A court may exercise personal jurisdiction over a person, who directly or by an agent:
>    (1) Transacts any business or performs any character of work or service in the State;
>    (2) Contracts to supply goods, food, services, or manufactured products in the State;
>    (3) Causes tortious injury in the State by an act or omission in the State;
>    (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State;
>    (5) Has an interest in, uses, or possesses real property in the State; or
>    (6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation, or agreement located, executed, or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

Cts. & Jud. Proc. § 6-103(b). The "statutory provision authorizing jurisdiction" must be identified in the complaint. *Tawney*, 2013 WL 5887625, at *2 (citing *Metro. Reg'l Info. Sys.*, 888 F. Supp. 2d at 698).

Plaintiffs rely upon § 6-103(b)(1), which applies to a defendant who "[t]ransacts any business or performs any character of work or service in the State," and § 6-103(b)(2), which applies to a defendant who "[c]ontracts to supply goods, food, services, or manufactured products in the State." Defs.' Dismiss Opp'n 2. According to Plaintiffs, Era has conducted business in Maryland even though its flights operate only in Alaska because it sells tickets through the Sabre distribution system, which has "offices in Maryland," and because Plaintiffs themselves purchased their tickets in Maryland, via the website expedia.com ("Expedia"). Pls.' Dismiss Opp'n 2.

At the outset, it is apparent that personal jurisdiction cannot rest on § 6-103(b)(2), because Era never contracted to supply any goods or services "in the State." Assuming, without deciding, that by purchasing tickets in Maryland, Plaintiffs entered into a contract with Era in Maryland, "the language of section 6-103(b)(2) cannot be read as extending to any contract

*negotiated* in Maryland." *A Love of Food I, LLC v. Maoz Vegetarian USA, Inc.*, 795 F. Supp. 2d 365, 370 (D. Md. 2011) (emphasis added). It covers only contracts to supply goods and services *in* Maryland, irrespective of where the contract was negotiated. *See id.* ("[Section 6-103(b)(2)] covers contracts that offer 'to supply goods, food, services, or manufactured products in the State,' regardless of whether the contract itself was negotiated outside of Maryland.").

Here, there is no question that the only services provided by Era were in Alaska, not in Maryland, and irrespective of where Plaintiffs actually purchased their tickets, long-arm jurisdiction simply does not arise under § 6-103(b)(2).

The application of § 6-103(b)(1), however, presents a much thornier question. Here, Plaintiff argues that business transactions over the Internet are "mainstays of the modern tourism business," and that "[t]he Defendants utilize its [*sic*] membership in Sabre to locate customers, communicate with customers and confirm customer itineraries, make reservations and issue tickets for travel." Pls.' Dismiss Opp'n.[6] Plaintiffs' cause of action does not arise out of the ticket sale itself, but out of events that took place in Alaska. Thus it is not entirely clear, and the parties do not address, whether the actions of Era employees in Alaska constitute "transact[ing] any business . . . in the State" merely by virtue of the fact that the tickets were purchased here. But assuming that they are, "[t]he Maryland courts have consistently held that the state's long-arm statute is coextensive with the limits of personal jurisdiction set by the due process clause of the Constitution." *Carefirst of Md. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003) (citing *Mohamed v. Michael*, 370 A.2d 551, 553 (Md. 1977)). So if the contacts alleged by Plaintiffs are sufficient to satisfy the dictates of due process, they likely will satisfy

---

[6] Curiously, although Plaintiffs' arguments relate primarily to the relevance of Internet transactions to personal jurisdiction, Plaintiffs have not cited a case more recent than 1993, and rely primarily on case law that pre-dates the Internet completely. *See* Pls.' Dismiss Opp'n.

the Maryland long-arm statute as well, insofar as the loss of Plaintiffs' Case can be seen to arise out of the purchase of tickets in Maryland.

> To satisfy the constitutional due process requirement, a defendant must have sufficient "minimum contacts" with the forum state such that "the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quotation and citation omitted). The minimum contacts test requires the plaintiff to show that the defendant "purposely directed his activities at the residents of the forum" and that the plaintiff's cause of action "arise[s] out of" those activities. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (citation and quotation omitted). This test is designed to ensure that the defendant is not "haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts." *Burger King*, 471 U.S. at 475 (quotations and citations omitted). It protects a defendant from having to defend himself in a forum where he should not have anticipated being sued. *See World-Wide Voklswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

*Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273 (4th Cir. 2009).

Plaintiffs do not dispute that Era offers flights only within Alaska or that Plaintiffs, in fact, came to Alaska to fly on a flight operated by Era. *See* Defs.' Interrog. Resps. ¶ 7, Defs.' Mot. to Dismiss Ex. 1, ECF No. 21-1; Compl. ¶ 4.1. Era maintains an Internet presence that includes a website, a Facebook account, and a Twitter account, as well as placing advertisements on the websites for the Anchorage Daily News and the Fairbanks Daily News-Miner, Interrog. Resps. ¶¶ 1, 3, all of which can be viewed from anywhere with Internet access. With those exceptions, Era advertises only in Alaska-based sources that it believes "are primarily read and accessed by individual[s] residing in the State of Alaska." *Id.* ¶ 2. Era operates no flights that originate or terminate in Maryland or, indeed, anywhere outside of Alaska. *Id.* ¶¶ 2, 4.

However, Plaintiffs note that they were able to purchase tickets to travel on an Era flight from within Maryland, through a somewhat attenuated set of relationships. Pls.' Dismiss Opp'n 2. To allow for tickets to be sold online, Era offers its flights through "a global distribution system ('GDS') called 'Sabre.' Sabre is one of three main GDS used in the travel industry. As a

9

member of Sabre, Era Alaska makes its flights searchable by other Sabre members, who are then able to book flights on Era Alaska through Sabre." Defs.' Interrog. Resps. ¶ 5. Plaintiffs have stated that they used the website Expedia to purchase tickets for their Era flight, through the Sabre system. Pls.' Dismiss Opp'n 2. They also assert that Sabre has offices in Maryland. *Id.* Plaintiffs do not allege any other facts to justify Maryland's exercise of personal jurisdiction over Defendants.

The Fourth Circuit outlined the circumstances under which activity over the Internet can subject a defendant to long-arm jurisdiction in *ALS Scan, Inc. v. Digital Service Consultants, Inc.*, 293 F.3d 707 (4th Cir. 2002), which adopted the reasoning of the Western District of Pennsylvania in *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W. D. Pa. 1997). As the Fourth Circuit explained:

> In *Zippo*, the court concluded that "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet." 952 F. Supp. at 1124. Recognizing a "sliding scale" for defining when electronic contacts with a State are sufficient, the court elaborated:
>> At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

*ALS Scan*, 293 F.3d at 713–14 (quoting *Zippo*, 952 F. Supp. at 1124).

Under this framework,

> a State may, consistent with due process, exercise judicial power over a person outside of the state when that person (1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the state, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts.

*Id.* at 714.

For example, in *ALS Scan* itself, the Fourth Circuit held that the mere fact that a website containing copyrighted material is accessible in Maryland does not create personal jurisdiction over the website's out-of-state internet service provider ("ISP"). *Id.* at 715. "Other than maintain its website on the Internet, [the ISP] has engaged in no activity in Maryland, and its only contacts with the State occur when persons in Maryland access Digital's website." *Id.*; *see also GTE New Media Servs Inc. v. Bellsouth Corp.*, 199 F.3d 1343 (D.C. Cir. 2000)("[P]ersonal jurisdiction surely cannot be based solely on the ability of District residents to access the defendants' websites, for this does not by itself show any persistent course of conduct by the defendants in the District."). The Fourth Circuit recognized:

> If we were to conclude as a general principle that a person's act of placing information on the Internet subjects that person to personal jurisdiction in each State in which the information is accessed, then the defense of personal jurisdiction, in the sense that a State has geographically limited judicial power, would no longer exist. The person placing information on the Internet would be subject to personal jurisdiction in every state.

*ALS Scan*, 293 F.3d at 712.

In contrast, *Zippo* presented a scenario in which the out-of-state defendant itself had contracted with ISPs in Pennsylvania to provide access to a subscription news service. *See Zippo*, 952 F. Supp. at 1121. The court held that because the defendant "repeatedly and consciously chose to process Pennsylvania residents' applications and to assign them passwords," it had made "a conscious choice to conduct business with the residents of" Pennsylvania and was on notice that it could be subject to suit there. *Id.* at 1126. Importantly,

the Western District of Pennsylvania discussed the degree of choice available to the defendant in determining where it would be subject to jurisdiction. It "was under no obligation to sell its services to Pennsylvania residents. . . . If [the defendant] had not wanted to be amenable to jurisdiction in Pennsylvania, the solution would have been simple—it could have chosen not to sell its services to Pennsylvania residents." *Id.* at 1126–27. As the Fourth Circuit later explained, "[w]hen a defendant runs an interactive site, through which he 'enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the internet,' he can properly be haled into the courts of that foreign jurisdiction." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 399 (4th Cir. 2003).

In *Young v. New Haven Advocate*, the Fourth Circuit considered whether newspapers based in Connecticut could be subject to jurisdiction in the Commonwealth of Virginia for a defamation suit arising out of statements made about a Virginia prison warden in the context of a Connecticut policy transferring prisoners to Virginia. 315 F.3d 256 (4th Cir. 2002). The only basis for jurisdiction advanced by the plaintiff was that:

> (1) the newspapers, knowing that [the warden] was a Virginia resident, intentionally discussed and defamed him in their articles, (2) the newspapers posted the articles on their websites, which were accessible in Virginia, and (3) the primary effects of the defamatory statements on [the warden's] reputation were felt in Virginia.

315 F.3d at 261–62. The Fourth Circuit "ask[ed] whether the newspapers manifested an intent to direct their website content—which included certain articles discussing conditions in a Virginia prison—to a Virginia audience." *Id.* at 263. Finding that the articles were not directed towards Virginia, the Fourth Circuit unequivocally rejected the notion that jurisdiction could be premised on such a thin foundation because otherwise "the traditional due process principles governing a

State's jurisdiction over persons outside of its borders would be subverted." *Id.* (citing *ALS Scan*, 293 F.3d at 712). *But see Calder v. Jones*, 465 U.S. 783, 786–87 (1984) (reaching a contrary conclusion where the defendants knew that the publication containing their allegedly libelous article had its greatest circulation in the state seeking to exercise jurisdiction).

More recently, in *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, a regional licensee of BlueCross BlueShield incorporated in Maryland ("Carefirst") brought a trademark suit in Maryland against a similarly named "non-profit, evangelical, pro-life advocacy organization" incorporated in Illinois and working almost exclusively in the Chicago area ("CPC"). 334 F.3d at 393–34. CPC's only ties with Maryland were a website accessible in Maryland and that was hosted and developed by company headquartered in Maryland, *id.* at 394, and a small number of donations to CPC by Marylanders, of which only one was shown to have been made through the CPC website, *id.* at 395. Although the CPC website was "'semi-interactive,' in that [it] contain[ed] features that ma[d]e it possible for a user to exchange information with the host computer," the Fourth circuit noted that there was only a single instance of a donation by a Maryland resident in the record. *Id.* at 400–01. Moreover, "the overall content of CPC's website has a strongly local character," emphasizing its work in Chicago specifically, "[r]ather than target[ing] a Maryland audience." *Id.* at 401. "In fact, the only respect in which CPC even arguably reaches out to Marylanders via its Internet website is in its generalized request that anyone, anywhere make a donation to support CPC's Chicago-based mission. Such a generalized request is . . . an insufficient Maryland contact to sustain jurisdiction in that forum." *Id.* [7]

---

[7] The Fourth Circuit also rejected the application of the "effects test," which allows "personal jurisdiction over a nonresident defendant acting outside of the forum when the defendant has intentionally directed his tortious conduct toward the forum state, knowing that the conduct

13

These cases demonstrate that the Fourth Circuit has been notably reluctant to extend personal jurisdiction to out-of-state defendants based on little more than their presence on the Internet. The mere fact that information can be accessed from within the forum state does subject the defendant to that state's jurisdiction, *ALS Scan*, 293 F.3d at 715, even when that information specifically relates to persons or events in the forum state, so long as it was not intentionally directed there, *see Young*, 315 F.3d at 263. Nor does the mere fact that Marylanders may have engaged in transactions with an out-of-state defendant who did not deliberately direct its activities into the State. *Carefirst*, 334 F.3d at 401.

Plaintiffs, citing to virtually no relevant authority, seek to distinguish this case from *Carefirst* on the basis that Era "utilize[s] its membership in Sabre to locate customers, communicate with customers and confirm customer itineraries, make reservations and issue tickets for travel. In this way, the Defendants are present in Maryland and doing business in Maryland." Pls.' Dismiss Opp'n. However, Plaintiffs' view of the facts is not supported by the record. First, it is not clear whether Era itself ever had any direct communications with Plaintiffs at all, or whether Sabre and Expedia effectively purchased the tickets from Era in Alaska and then resold them in Maryland. *Cf. World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 268, 295–99 (1980) (holding that the mere fact that an automobile sold by defendant *could* end up in the forum state was not sufficient, without more, to make it foreseeable that it would). Second, and perhaps more importantly, Era did not "manifest[] intent of engaging in business or other interactions within" Maryland. *ALS Scan*, 293 F.3d at 714. Era was not "locat[ing] customers"

---

would cause harm to a forum resident." *Carefirst*, 334 F.3d at 398 (citing *Calder v. Jones*, 465 U.S. 783 (1984)). Because Plaintiffs' complaint arises entirely out of events that took place in Alaska, *see* Compl., it does not appear that the "effects test" could provide a valid basis for personal jurisdiction, *see Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 280 (4th Cir. 2009) (finding that the effects test weighed against finding personal jurisdiction where the relevant harm occurred outside of the jurisdiction).

in Maryland as Plaintiffs suggest; rather, Era was advertising exclusively in Alaska for flights wholly within Alaska, and was making tickets on those flights available on the Internet in a manner that could be accessed by potential passengers anywhere, but used by those passengers *only* if they first came to Alaska to board their flight. Rather, it was Plaintiffs who sought out Era, using the Internet to reach into Alaska from Maryland, not the other way around. It is not apparent that Era did anything affirmatively to reach into this jurisdiction; as in *Carefirst*, a single Maryland transaction reflected nothing more than the "generalized" possibility that "anyone, anywhere" may buy a ticket and was, "under the circumstances, an insufficient Maryland contact to sustain jurisdiction" here. *Carefirst*, 334 F.3d at 401. Finally, even if there may be circumstances in which a defendant in Era's position *could* be subject to jurisdiction in Maryland, Plaintiff has failed to satisfy its burden to show or allege sufficient facts here. *See Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989) (on issues of personal jurisdiction, "the burden [is] on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of the evidence"). This Court lacks personal jurisdiction over Era.

Defendants also have argued that Plaintiffs' "allegations do nothing to establish a connection between Defendant Bob Hadjukovich and Maryland." Defs.' Mot. to Dismiss 4. "Plaintiffs appear to concede this point, as they have failed to respond to this argument." *See* Pls.' Dismiss Opp'n; *Burns & Russel Co. of Balt. v. Oldcastle, Inc.*, 166 F. Supp. 2d 432, 440 (D. Md. 2001)). Thus this Court also lacks personal jurisdiction over Hadjukovich.

**B. Motion for Leave to Amend**

Plaintiffs seek leave to amend their complaint to add allegations "to support their claim that the jurisdiction lies in Maryland." Pls.' Mot. to Amend 2. Whether to grant a motion for leave to amend is within this Court's discretion. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Rule 15(a)(2) provides the standard for whether to grant a motion for leave to amend that a plaintiff files more than twenty-one days after defendants file a responsive pleading or motion to dismiss, as is the case here. *See id.*; Fed. R. Civ. P. 15(a)(2). Pursuant to Rule 15(a)(2), "[t]he court should freely give leave [to amend] when justice so requires." The Court only should deny leave to amend if amendment "would prejudice the opposing party, reward bad faith on the part of the moving party, or . . . amount to futility," *MTB Servs., Inc. v. Tuckman-Barbee Constr. Co.*, No. RDB-12-2109, 2013 WL 1819944, at *3 (D. Md. Apr. 30, 2013); *see Forman*, 371 U.S. at 182 (stating that the court also may deny leave if the plaintiff has amended more than once already without curing the deficiencies in the complaint); *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006). Otherwise, "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief," and the plaintiff moves to amend, the Court should grant the motion so that the plaintiff has the "opportunity to test his claim on the merits." *Forman*, 371 U.S. at 182.

The paragraphs Plaintiffs seek to add relate to Era's relationship with Sabre and the fact that Plaintiffs purchased their tickets through Expedia from Maryland. *See* Redlined Am. Compl. ¶¶ 1.2–1.3, 4.1. Because I already have found that these allegations are not sufficient to support Maryland's exercise of jurisdiction over Defendants, amendment of the complaint would not allow for jurisdiction in this Court and therefore would be futile. Accordingly the motion to amend will be denied.

### C. Transfer to Another District Court

Although this Court cannot exercise jurisdiction over Defendants, Plaintiffs urge that "the proper result is not dismissal of the Complaint but transfer of the case to an appropriate Court in Alaska under 28 U.S.C. § 1404(a)." Pls.' Dismiss Opp'n. However, the governing Code

16

provision appears to be 28 U.S.C. § 1406(a), which provides that the Court "in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it might have been brought."

"The language of § 1406(a) is amply broad enough to authorize the transfer of cases, however wrong the plaintiff may have been in filing his case as to venue, whether the court in which it was filed had personal jurisdiction over the defendants or not." *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962); *see also Robbins v. Yutopian Enters.*, 202 F. Supp. 2d 426, 430 (D. Md. 2002) (a court lacking personal jurisdiction has the discretion to "transfer [the case] to another district court pursuant to 28 U.S.C. § 1406(a) . . . if doing so is in the interests of justice"). It is far from clear that transferring this case would serve the interests of justice. It appears that Plaintiffs are seeking not only to render Defendants liable for Plaintiffs' own actions in losing valuable property, but that they seek to pierce the corporate veil to find Era's president and parent corporations liable as well. It is questionable whether some of these claims can be maintained consistent with Fed. R. Civ. P. 11(b), much less that Plaintiff will prevail on them. It also is not clear that these claims were brought within the applicable statute of limitations. *See* Alaska Stat. § 09.10.070 (two year limitations period for tort actions); *see also* Compl. (filed August 23, 2012 with respect to actions that took place between August 22 and August 23, 2010).

However, these are issues of Alaska law best decided by an Alaska court. And I note that whereas Fed. R. Civ. P. 12(h)(2) still would allow Defendants to file a motion to dismiss under Rule 12(b)(6), were I to dismiss this case, Plaintiffs undoubtedly would be barred from bringing it in an Alaska court nearly four years after their claim accrued. And although Plaintiff's argument in favor of transfer over dismissal was rather brief, Defendants have not responded to it

and therefore have conceded the point. *See Burns & Russel*, 166 F. Supp. 2d at 440. Accordingly, rather than dismiss this case and forever bar Plaintiffs' claims, however dubious, on the scant briefing I have before me, I will transfer this case to the United States District Court for the District of Alaska.

**III. CONCLUSION**

In sum, the Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, is DENIED; Plaintiffs' Motion for Leave to Amend the Complaint is DENIED; and the case is SHALL BE TRANSFERRED to the United States District Court for the District of Alaska. A separate order shall issue.

Dated: May 28, 2014 /S/
Paul W. Grimm
United States District Judge

dsy